THE OHIO CASUALTY INS. CO. ET AL. *v.* REESE.

(No. D89921—Decided May 18, 1970.)

Municipal Court of Dayton.

*Messrs. Gross & Gross*, for plaintiffs.
*Messrs. Scharrer & Mumpower*, for defendant.

RICE, J. This cause came on to be heard by the court upon the defendant's petition to vacate a judgment, filed after the term of court in which the judgment was entered against him. The defendant alleges, as grounds for such vacation, the fact that the judgment was taken without proper service of summons on the defendant and without his being otherwise legally notified of the time and place of the taking of the judgment. The defendant alleges further no notice of the judgment until just prior to the expiration of the term of court in which the judgment was entered.

The cause was heard upon the pleadings and testimony of both parties and their witnesses. In addition, the court has had the benefit of the excellent oral arguments and written memoranda of both parties.

The defendant indicates, in his petition to vacate judgment, that the action is brought under the terms of R. C. 1901.21 and 2325.01.

I. Facts.

The facts, as revealed at the hearing of the captioned cause, as far as were relevant to the issue at bar, are as follows:

1. The service of summons was made by residential service. The bailiff's return disclosed that "on the 21st day of August, 1969, I served this writ on the above named defendant by leaving a true and certified copy thereof, with all endorsements thereon, at 344 South Main Street, usual place of residence."

2. 344 South Main Street is, in fact, the defendant's usual place of residence.

3. The return was signed by the deputy bailiff making service, Harry Condron, who testified at the hearing that, while he does not specifically recall this particular service of summons, he has served many papers in the past at that location, a large, multi-unit rooming house. He testified to his manner of making residential service at this location as follows: there are nine (9) mailboxes at this location, in a row, located between the outer and inner doors of the rooming house. Since ingress into the building is not

possible, and since it is not possible to gain entrance into a specific mailbox (they are locked), the bailiff would leave the summons wedged behind the row of mailboxes, or clipped onto the boxes with a clamp or clothes pin.

4. The defendant testified that he never received service of summons, never received the notification that the judgment had been entered against him, and that, in fact, the first he knew of the law suit was when he found an order in aid of execution lying on top of the row of mailboxes some three months later, shortly before the expiration of the term of court in which the judgment was entered.

5. The defendant does admit receiving, some nine months prior to the judgment being taken and some eight months prior to the lawsuit being filed, a letter from the plaintiff's attorney concerning some damages and money owed. This letter was taken by the defendant to his insurance carrier and he thought no more of it until he received the aforementioned order in aid of execution.

6. The defendant alleges a valid defense to the plaintiff's cause of action.

II. Issues.

Will a defendant's petition to vacate a judgment, filed after the term of court in which the judgment was entered, be sustained on the grounds that the judgment was taken without proper service of summons on the defendant and without his being otherwise legally notified of the time and place of the taking of such judgment, the defendant claiming no notice of the judgment until shortly before the expiration of the term of court in which the judgment was entered, when it appears, from the return of summons executed by the bailiff, that residential service was made at the defendant's usual place of residence; and where it appears also, from the testimony of this same bailiff that, although not recalling the specific service, his habitual manner of making service at defendant's residence (a multi-unit rooming house) is by means of wedging the summons behind the row of nine tenant mailboxes, or by clipping same to the mailboxes with a clamp or clip?

Or, more succinctly; is the aforementioned manner of

making residential service sufficient, both as a matter of fact and as a matter of law, to give this court jurisdiction over the action and the resulting personal judgment? If so, the judgment must stand; if not, then the judgment can be vacated and held for naught.

III. The Law.

The petition to vacate the judgment is filed beyond the term of court in which the judgment was taken. While there is no limitation or restriction, either statutory or otherwise, upon the power of the court to vacate a judgment within term, within the exercise of a sound discretion, *Pettibone* v. *Shaffner* (1948), 58 Ohio Law Abs. 182, the court's power to so modify or vacate *after term* is rigidly circumscribed by the provisions of R. C. 2325.01, *et seq.* (Made applicable to the Municipal Courts by the terms of R. C. 1901.21.)

The procedures to be followed in determining whether or not to vacate or modify a judgment after term are, *firstly*, that the court shall determine whether or not statutory grounds for relief, pursuant to R. C. 2325.01 have been alleged (See R. C. 2325.06), and *secondly*, if so, whether the judgment-debtor has alleged and the court has adjudged that there is a valid defense to the action in which judgment was rendered (See R. C. 2325.07 and *First National Bank* v. *Mullen*, 7 Ohio N. P. (N. S.) 313).

There is a conflict in the case law as to whether the question of improper service of process, with the resultant lack of jurisdiction in the court, is an "irregularity" within the meaning of R. C. 2325.01(C), *Union Joint Stock Land Bank* v. *Byerly* (App.), 24 Ohio Law Abs. 673; *Lapp* v. *Hildreth*, 21 Ohio C. C. 191, and 32 Ohio Jurisprudence 2d 263, Section 569, footnotes 16 through 18, or, rather, whether it is not subject to the provisions of that section and thus properly raised, by motion, at any time during or after term. (A motion to set aside a judgment is properly granted if the court which rendered the judgment did not have jurisdiction over the judgment debtor, *Marsden* v. *Soper*, 11 Ohio St. 503; *Cushman* v. *Welsh*, 19 Ohio St. 536, even after the term of court in which the judgment was

rendered, *Cecil* v. *Jeffries*, 12 Ohio Misc. 25.) It has been held that the provisions of R. C. Chap. 2325., relating to the vacation of judgment after term, have no application to void judgments, such as a judgment which is void for want of jurisdiction. *Lincoln Tavern Inc.* v. *Snader*, 165 Ohio St. 61; *Donovan* v. *Decker*, 98 Ohio App. 183.

It is clear that, regardless of which of the two approaches are followed, the question of improper service of process with the resultant lack of jurisdiction is one which can be considered at any time, within or beyond the term of court in which the judgment is rendered.

Residential service is authorized by Ohio Law (R. C. 2703.08 "* * * service shall be made at any time before the return date, by delivery of the copy of the summons with endorsements thereon, to the defendant personally *or* by leaving a copy at his usual place of residence * * *."). This section is made applicable to the Municipal Court by R. C. 1901.23.

This section does not require, as a prerequisite to jurisdiction, that a party receive a copy of summons, it being presumed that if it is put at his usual place of residence, he will receive it. *Brumbaugh* v. *Coblentz* (App.), 16 Ohio Law Abs. 331.

Under Ohio law, it is not vital to the validity of residential service that the leaving of the copy at the residence be brought to the personal knowledge of the party sought to be bound by the service. *Maher* v. *Dean* (App.) 137 N. E. 2d 149.

All that is required for valid residential service in Ohio is that it is made under such circumstances and be of such a character that the presumption that the defendant received it is a fair one in accordance with the facts. The question thus becomes whether or not the summons was left at the residence of the defendant in such a place and in such a manner that it is reasonably probable that the defendant could receive the notice of the action against him. This is the test in Ohio as enumerated by the case of *Sours* v. *State*, 172 Ohio St. 242.

As with all evidentiary presumptions, the presumption

of receipt of residential service can be overcome; overcome by evidence to the effect that the service of the summons, although made at the defendant's usual place of residence, was not made in such place and in such manner that it is reasonably probable that the defendant could receive the notice of the action against him.

The court feels that not only the test but also the factual situation in the *Sours case, supra,* controls in the matter at bar. In the *Sours case,* the court held that attaching a summons with a rubber band to an outside door knob of the defendant's house fails to constitute the leaving of the summons at the usual place of residence, in such place and in such manner that the defendant may reasonably be expected to receive it and that such attachment does not constitute valid residential service. (See also *Kletchko* v. *C. H. Shupp and Son,* 15 Ohio N. P. (N. S.) 322, wherein it was held that pinning a copy of the summons to the back door of the defendant's residence was not valid residential service under the law.) The court feels that the factual situation and the rationale of the *Sours case* is analogous and applicable to the facts of the instant case. Surely a summons clipped to or wedged behind a row of nine mailboxes, located between the open outer door and the locked inner door of a multi-unit rooming house, is no better residential service, in the terms of the probabilities of its receipt by the defendant, than the rubber banding of the summons to the door in the *Sours case.*

The court is cognizant of the fact that solicitors, salesmen and advertisers are accustomed to affixing handbills and other ''junk'' items to or behind mailboxes, particularly when the mailboxes are not capable of being opened except with a key. This ''junk'' is so prevalent that often it is cast away unread if it is noticed at all. One does not expect, as the court indicated in the *Sours case,* to find important business or legal papers in such a place. One cannot overlook the very real possibility that a legal paper wedged behind or clipped to a row of nine mailboxes might be picked up and discarded by one other than the person for whom it is intended.

In addition, the fact that the service in the *Sours case* was affixed to the door knob of a private residence, whereas service in this case was clipped onto or wedged behind a row of nine mailboxes in a multi-unit dwelling, renders the service, in the court's eyes, even less likely than in the *Sours case* to reach the intended party.

IV. Decision. The court thus holds that the wedging behind or clipping onto a row of nine locked mailboxes, one of which is the defendant's, of a summons, though it be at the defendant's usual place of residence, does not constitute leaving the summons in such place and in such manner that the defendant may reasonably be expected to receive it and therefore that such "wedging or clipping" does not constitute valid residential service within the meaning of R. C. 2303.08 and the case of *Sours* v. *State, supra.*

In vacating the judgment herein for the aforementioned reasons, the court is not unmindful of the case of *Mayer* v. *Groves* (1914), 18 Ohio C. C. (n. s.) 38, which holds that a judgment will not be vacated because of no service on the defendant, where the evidence contradicting the return of the sheriff is not clear and convincing. The court feels, however, that the defendant's testimony that he did not receive service, together with the probability that service as made in this case was not made in such place and manner as to be reasonably expected to reach the defendant, constitutes, not only sufficient evidence to rebut the presumption of receipt of residential service but also constitutes clear and convincing evidence contradicting the bailiff's return of service.

Thus, the judgment will be ordered vacated and held for naught, and the matter is ordered referred to the assignment commissioner to be set down for hearing on the merits.

*Judgment vacated.*